**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PRIME CORE TECHNOLOGIES INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered) |
| PCT LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>PLUTUS FINANCIAL INC. d/b/a ABRA and PLUTUS LENDING LLC,<br><br>Defendants. | Adv. Pro. No. 25-50960 (JKS)<br><br>**Related Adv. D.I. Nos. 1, 14, 25, 28, 29, 30 and 31**[2] |

**OPINION**

Before the Court is the Defendants ("Abra" or the "Defendants") motion to dismiss[3] the Complaint filed by PCT Litigation Trust ("PCT"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure state a claim (the "Motion to Dismiss"). For the reasons set forth below, the Court will grant, in part, and deny, in part, the Motion to Dismiss.[4]

---

[1] The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528).

[2] Citations to D.I. __ reference the docket entries in the lead bankruptcy case and citations to Adv. D.I. __ reference the docket entries in this adversary proceeding.

[3] Adv. D.I. 14 (Defendants' Plutus Financial Inc. d/b/a Abra and Plutus Lending LLC Motion to Dismiss the PCT Litigation Trust's Complaint and attached Memorandum of Law).

[4] PCT filed an opposition to the Motion to Dismiss (Adv. D.I. 25) and the Defendants filed a reply brief in support of their Motion to Dismiss (Adv. D.I. 28). PCT filed a Request for Oral Argument (Adv. D.I. 29) and Defendants filed a Notice of Completion of Briefing. Adv. D.I. 31. The Court did not hear oral argument because the facts and

## JURISDICTION

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

### A. Procedural Background

On August 14, 2023, Prime Core Technologies Inc. and its affiliated debtors ("Prime" or "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

PCT was created pursuant to the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors[5] to among other things, commence, litigate and settle Vested Causes of Action (as defined in the Plan).[6]

On May 27, 2025, PCT commenced this adversary proceeding by filing the Complaint against Defendants, pursuant to sections 544, 547, 548, and 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and section 1304 of Title 6 of the Del. Code Ann., seeking to avoid and recover all preferential, actual fraudulent, and/or constructive

---

legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument.

[5] D.I. 592 (the "Plan"); D.I. 644 (Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code).

[6] D.I. 592 (Plan) at §§ 1.116, 6.21.

fraudulent transfers of property made by the Debtors to or for the benefit of Abra (the "Transfers"), plus interest, attorneys' fees, and costs.

The Defendants seek dismissal of the Complaint, under Rule 12(b)(6), on the grounds that the Complaint fails to allege facts sufficient to support a claim upon which relief can be granted. More specifically, the Defendants argue that the fraudulent and preferential transfer claims (Counts I through IV) do not identify the transferor or transferees and instead rely on impermissible "group pleading" and the claims for recovery of avoided transfers under section 550 of the Bankruptcy Code and for disallowance of the Defendants' claims (Counts V and VI) must be dismissed because they depend on the other causes of action.

**B. Factual Background**[7]

Prime was a crypto company. Thousands of other crypto companies used Prime primarily to gain access to the U.S. banking system by converting crypto to fiat, which is commonly referred to as an "on-and-off ramp." The Nevada Financial Institutions Division shut down Prime in June 2023 and, in August 2023, Prime filed for bankruptcy.

The Defendants are affiliates operating under the common name of Abra.[8] Abra provides a platform which allows users to buy, sell, trade, and earn interest on crypto. Abra was one of Prime's former customers. Defendant Plutus Financial Inc. ("PFI") is registered as a money

[7] The Court adopts the facts from the Complaint, accepting all of the Complaint's well-pleaded facts as true and disregarding any legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

[8] Adv. D.I. 1 (Compl.) at ¶ 29.

service business with the Financial Crimes Enforcement Network, but neither Defendant is licensed as money transmitters in any state.[9]

In or around March 2018, as part of Prime's custodial services, Prime created and implemented several self-hosted digital wallets (the "Legacy Wallets"). Prime "self-hosted" the Legacy Wallets —meaning, Prime managed the Legacy Wallets on its own and without the assistance of any third party. Prime used Legacy Wallets to maintain and store crypto transferred to it by Prime's customers. One such Legacy Wallet used by Prime was the "98f Wallet." The 98f Wallet is a "multi-sig" digital wallet requiring multiple digital "signatures" to access and execute a transaction.[10]

In or around July 2019, Prime began a migration of the assets it held in the Legacy Wallets to a third-party, crypto-security platform managed by Fireblocks LLC ("Fireblocks").[11] Prime phased out its use of the Legacy Wallets in conjunction with the migration to Fireblocks.[12]

Prime lost access to the 98f Wallet which held millions of dollars' worth of crypto.[13] To cover these losses, Prime used fiat other customers transferred to Prime to satisfy withdrawal requests.[14]

---

[9] Adv. D.I. 1 (Compl.) at ¶ 29. The Complaint attaches the Declaration of James P. Brennan (the "Brennan Decl."). Adv. D.I. 1 (Compl.) at Ex. A.

[10] Adv. D.I. 1 (Compl.) at ¶¶ 59-62.

[11] Adv. D.I. 1 (Compl.) at ¶ 68.

[12] Adv. D.I. 1 (Compl.) at ¶¶ 68-72.

[13] Adv. D.I. 1 (Compl.) at ¶¶ 106-109.

[14] Adv. D.I. 1 (Compl.) at ¶¶ 110-115.

**C. Relationship between Prime and the Defendants**

Abra is a global crypto company that provides customers with digital wallet services, liquidity service, and a trading platform to buy and sell crypto.[15] Prime provided custodial services to Abra, holding and processing securities, currency, cryptocurrency, and other assets.[16]

Prime and Defendant Plutus Lending LLC ("PLL") entered into a "New Account Agreement" on October 20, 2020,[17] under which PLL appointed Prime Trust as custodian of the assets PLL transferred to Prime.[18] In December 2022, Prime and "Plutus Financial ABRA" entered into the "Order Form" which governed the parties' relationship from December 1, 2022, through November 20, 2023.[19] The Order Form subjected PFI to the Prime Trust Master Services Agreement ("MSA") and Service Schedule for Prime Trust Custodial Services (the "Custodial Service Schedule," together with the Order Form and MSA, the "Revised Abra Agreements").[20]

The Defendants electronically routed fiat and cryptocurrency to the Debtors and requested electronic transfers from the Debtors. According to the Complaint, it was through these electronic transfers that the Debtors realized that they could not access the 98f Wallet.[21] The Defendants continued to transfer ETH into the 98f Wallet despite Prime requesting that the Defendants route deposits into other accounts.[22] The Defendants allegedly transferred an

---

[15] Adv. D.I. 1 (Compl.) at ¶¶ 81-82.

[16] Adv. D.I. 1 (Compl.) at ¶¶ 53, 55, and 89-90.

[17] Adv. D.I. 1 (Compl.) at Ex. B.

[18] Adv. D.I. 1 (Compl.) at ¶¶ 89-92 and Ex. B.

[19] Adv. D.I. 1 (Compl.) at ¶ 223 and Ex. H.

[20] Adv. D.I. 1 (Compl.) at ¶ 224 and Exs. H, I, and J.

[21] Adv. D.I. 1 (Compl.) at ¶¶ 104-109.

[22] Adv. D.I. 1 (Compl.) at ¶¶ 116-127.

additional 12,696 ETH to the 98f Wallet, 53% of the total amount of ETH in the 98f Wallet, after Prime instructed the Defendants to cease sending crypto to the 98f Wallet and to use a new digital address for its transfers.[23]

**1. Alleged Fraudulent Transfers**

In response to Prime's inability to access the ETH in the 98f Wallet, certain executives at Prime decided to use fiat currency from commingled, omnibus Prime accounts to purchase replacement ETH (the "Replacement ETH") from one of Prime's liquidity providers ("Liquidity Provider").[24] Between December 23, 2021 and March 30, 2022, Prime executed ten different purchases from a Liquidity Provider totaling 23,578 ETH worth $76,367,547.90 USD based on the value of ETH at the time of each respective purchase.[25] According to the Complaint, Prime executives intentionally falsified Prime's Internal Ledger to conceal the fact that Prime was using fiat transferred to it by other customers to fund its purchase of the Replacement ETH.[26] Prime covered Defendants' transfer requests using primarily the Replacement ETH to ensure that the Defendants—one of Prime's most important customers—was made whole even though Prime knew it did not have enough assets on hand to satisfy the debts it owed to all of its customers.[27] Defendants' withdrawal requests were primarily satisfied using the 23,578

[23] Adv. D.I. 1 (Compl.) at ¶¶ 127-128.

[24] Adv. D.I. 1 (Compl.) at ¶¶ 136–142.

[25] Adv. D.I. 1 (Compl.) at ¶ 143.

[26] Adv. D.I. 1 (Compl.) at ¶¶ 147–169.

[27] Adv. D.I. 1 (Compl.) at ¶ 144.

Replacement ETH—not the same ETH that Defendants had originally transferred to Prime (the "Actual Fraudulent Transfers").[28]

Because Defendants transferred 23,778 ETH to a digital wallet address over which Prime had neither possession nor control (i.e., the 98f Wallet), PCT alleges that Prime did not receive reasonably equivalent value in exchange for at least 23,778 ETH it transferred to the Defendants during this period (the "Constructive Fraudulent Transfers," and with the Actual Fraudulent Transfers, and as defined above the "Fraudulent Transfers"). PCT seeks to recover the greater of (a) 23,778 ETH, or (b) cash in an amount equal to the greatest value of 23,778 ETH at any time since the ETH Purchases, allegedly fraudulently transferred to the Defendants.

**2. Alleged Preferential Transfers**

During the 90-day period leading to the Petition Date (the "Preference Period"), Prime transferred $45,486,117.22 in fiat currency to the Defendants.[29] The Defendants transferred $37,771,991.88 of potential new value in fiat currency to Prime during the Preference Period.[30] Prime asserts a preference claim against the Defendants in an amount of not less than $7,714,125.34 USD (the "Preferential Transfers") after accounting for subsequent new value and considering the Defendant's transaction activity with Prime over the course of their relationship.[31]

---

[28] Adv. D.I. 1 (Compl.) at ¶¶ 170–181.

[29] Adv. D.I. 1 (Compl.) at ¶ 229.

[30] Adv. D.I. 1 (Compl.) at ¶ 230.

[31] All of the Preferential Transfers were transferred from bank accounts owned in the name of and controlled by Prime Trust. Brennan Decl. at ¶¶ 70, 72, 80-81, and 84, and Exs. E, F, H, and I.

## LEGAL ANALYSIS

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), challenges the sufficiency of the factual allegations in a complaint.[32] Rule 12(b)(6) is related to Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[33] When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[34] Two "working principles" underly this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[35]

Under this pleading standard, a complaint must nudge claims "across the line from conceivable to plausible."[36] The movant carries the burden of showing that dismissal is

---

[32] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[33] Fed. R. Civ. P. 8(a)(2) and 12(b)(6), Fed. R. Bankr. P. 7008 and 7012.

[34] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (cleaned up).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted).

[36] *Twombly*, 550 U.S. at 547.

appropriate.[37] The relevant record for consideration includes the complaint and any document "integral to or explicitly relied upon in the complaint."[38]

In analyzing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[39] Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[40] Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[41] After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[42]

**B. Counts I, II, III and IV: Impermissible Group Pleading**

Defendants argue that the Complaint fails to state a claim under section 547 of the Bankruptcy Code and falls short of the pleading requirements of Rule 8(a)(2). More specifically, the Defendants assert the Complaint does not identify the transferee and transferor of each alleged transfer or the nature and amount of each antecedent debt for both the alleged preferential and fraudulent transfers.

---

[37] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.*), 496 F. Supp. 2d 404, 408 (D. Del. 2007).

[38] *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)).

[39] *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675).

[40] *Id. See also Fowler*, 578 F.3d at 210–11 (citing *Iqbal*, 556 U.S. at 679).

[41] *Santiago*, 629 F.3d at 130.

[42] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).).

"To establish a plausible preference claim, the plaintiff must (i) identify the nature and amount of each antecedent debt; (ii) identify each alleged preference; and (iii) allege that it conducted reasonable due diligence into the defendant's known or reasonably knowable affirmative defenses. Satisfaction of these elements is generally sufficient to establish a plausible claim that gives enough factual detail to put the defendants on notice of the claims against them."[43]

Similarly, for plausible claims of fraudulent transfer, a "complaint based on a theory of collective responsibility must be dismissed."[44] In order to satisfy *Twombly* and *Iqbol*, PCT would have to provide "specific facts as to which . . . Defendant received which transfer."[45]

**1. Transferor**

The Complaint and the Brennan Declaration identify the four debtors in the Chapter 11 Cases as the "Debtors" or "Prime."[46] The Complaint also identifies "Prime Trust LLC" (aka "Prime Trust") as the entity that made both the alleged Fraudulent Transfers and Preferential Transfers. Prime Trust was the counterparty to both the New Account Agreement and the

---

[43] *Off. Comm. Of Unsecured Creditors v. Nimble Gravity, LLC (In re Pack Liquidating, LLC)*, No. 22-10797, 2024 WL 4633499, at *2 (Bankr. D. Del. Oct. 30, 2024) (cleaned up; footnotes and citations omitted).

[44] *Beskrone v. OpenGate Cap. Grp, LLC (In re PennySaver USA Publ'g, LLC)*, 602 B.R. 256, 272 (Bankr. D. Del. 2019) (*quoting Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.")).

[45] *In re PennySaver USA Publ'g, LLC*, 602 B.R. at 268 (*citing Stanziale v. Heico Holdings, Inc. (In re Conex Holdings, LLC*), 514 B.R. 405, 414 (Bankr. D. Del. 2014)).

[46] *See* Adv. D.I. 1 (Compl.) at n. 1 and Ex. A (Brennan Decl.) at n.1.

Revised Abra Agreements.[47] The bank accounts which made the alleged Preferential Transfers were in the name of "Prime Trust."[48]

As a result, PCT has properly identified Prime Trust as the Transferor of both the alleged Fraudulent Transfers and Preferential Transfers.

**2. Transferee**

The Complaint and the Brennan Declaration identify both PLL and PFI together as "Abra" or "Defendants."[49] The Brennan Declaration, however, attaches the API log audit data corresponding with the Preferential Transfers that identifies the transferee of each transfer as "Plutus Lending LLC (ABRA)" under the "organization label" for each of the Preferential Transfers.[50]

Similarly, the Brennan Declaration attaches the API log audit data corresponding with the Fraudulent Transfers and identifies the transferee of each transfer as "Plutus Lending LLC (ABRA)" under the "organization label" for each of the Fraudulent Transfers.[51] Additionally, the operative agreement, the New Account Agreement, is between Prime Trust and "Plutus Lending LLC," and executed on behalf of "Plutus Lending LLC."[52]

Consequently, PLL was properly identified as the transferee of the alleged Preferential Transfers and Fraudulent Transfers.

---

[47] *See* Adv. D.I. 1 (Compl.) at ¶¶ 89, 223-24 and Exs. B, H, I and J.

[48] *See* Adv. D.I. 1 (Compl.) at ¶ 189-207; Brennan Decl. at ¶¶ 82, 80-81, and 84; and Exs. F and I.

[49] *See* Adv. D.I. 1 (Compl.) at p. 1 and Ex. A (Brennan Decl.) at ¶ 10.

[50] Brennan Decl. at ¶ 68 and Ex. D.

[51] Brennan Decl. at ¶ 82 and Ex. G.

[52] Adv. D.I. 1 (Compl.) at Ex. B.

PFI was not properly identified as the transferee of any of the alleged Preferential or Fraudulent Transfers. PCT argued in its response that PFI is “named in this Adversary Proceeding to the extent its affairs are intertwined with those of [PLL] and/or that it possesses or came into possession of property belonging to Prime’s estates.”[53] As stated above, in order to satisfy *Twombly* and *Iqbol*, PCT must provide “specific facts as to which . . . Defendant received which transfer,”[54] which it did not do as to PFL. As a result, the Complaint will be dismissed as to PFI since it does not identify any Transfers to PFI.

**3. Reasonable Diligence**

Finally, in accordance with 11 U.S.C. § 547(b), the Complaint states Plaintiff has conducted reasonable due diligence into the circumstances of the case and has taken into account the known or reasonably knowable affirmative defenses that the Defendants could assert.[55]

PTC has satisfied the three elements sufficiently to establish a plausible claim and provides Defendant PLL enough factual details to put it on notice of the claims against it.

**C. Counts V and VI: Dependent on Other Causes of Action**

The Defendants assert that because the Complaint did not properly identify the transferee and transferor, PCT’s claims for the avoidance of those transfers pursuant to section 550 of the Bankruptcy Code should be dismissed. Claims pursuant to sections 550 and 502(d) are derivative of the fraudulent transfer and preference claims.[56] Because the underlying claims are

---

[53] Adv. D.I. 26 at n. 9.

[54] *In re PennySaver USA Publ’g, LLC*, 602 B.R. at 268 (*citing In re Conex Holdings, LLC*, 514 B.R. at 414).

[55] Adv. D.I. 1 (Compl.) at ¶ 206.

[56] *Anderson News, LLC v. The News Group, Inc. (In re Anderson News, LLC)*, No. 09-10695 CSS, 2012 WL 3638785, at *4 n. 31 (Bankr. D. Del. Aug. 22, 2012).

not being dismissed as to PLL, claims under 550 and 502(d) are similarly not being dismissed as to PLL.

**CONCLUSION**

For the reasons set forth above, the Motion to Dismiss will be granted, in part, and the Complaint will be dismissed as to PFI. The remainder of the Motion to Dismiss will be denied. An Order will be issued.

Dated: August 20, 2026

J. Kate Stickles
United States Bankruptcy Judge